A. E. McKinney *et al.* v. John Ward *et al.*

1. Finding, *When Conclusive.* Where a question of fact is submitted to the court, and the court finds generally for the defendant, such finding is conclusive upon the plaintiff, unless it is shown that there was no competent evidence to sustain such finding.

2. Husband's Debts — *Wife's Land not Subjected to Payment.* Where a husband is engaged in the dry-goods business, and is largely indebted to parties for goods purchased, and he sells such goods, and receives in part payment therefor eighty acres of land, which is conveyed to the wife by the purchaser of such goods; and where it is also shown that the husband is legally indebted to the wife in a sum equal to the value of said land, such transaction, even though fraudulent, is not a sufficient foundation for an action to subject other and different real estate, owned by the wife in her own right long before this transaction took place. to the payment of her husband's debts.

*Error from Allen District Court.*

This was an action brought by the plaintiffs in error against the defendants in error, to subject a certain lot and building in Iola, Kansas, to a judgment obtained by the plaintiffs in error against John Ward. The record shows substantially the following facts: That John Ward and Bridget Ward were husband and wife, and came to Allen county, Kansas, about the year 1877, at which time Bridget Ward had $2,000 in money in her own right. John Ward had no property of any kind. The money belonging to Bridget Ward was by her husband invested in farming lands in Allen county, upon which they resided, and engaged in farming and stock-raising, until the fall of 1881, when they sold their stock and farm and moved into the town of Iola. The title to the farm land was taken in the name of John Ward. After moving to Iola, the money arising from the sale of their farm and property was invested in lots and buildings in Iola, and the title taken in the name of Bridget Ward. At this time they were out of debt. Upon one of the lots so purchased was a dwelling-house, which was occupied by Ward and wife as a homestead. In the summer of 1882, John Ward engaged in the dry-goods business in

Iola, and on the 11th day of December purchased a bill of goods from the plaintiffs in error, amounting to $626.57. At the time of the purchase of said goods, John Ward made statements to the agent of the plaintiffs of the amount of property owned by him, and enumerated the property owned and purchased by his wife, Bridget Ward, being the lots and building in Iola. Afterward, on the 22d day of December, Ward mortgaged his stock of goods for $2,800, and in January, 1883, he sold the entire stock of goods to one McNutt for $1,600. McNutt, in part payment, conveyed to Bridget Ward eighty acres of land, paying the balance, $400 or $500, in money. Afterward, Ward and wife mortgaged the eighty acres of land, and afterward sold the land. About the 20th of December, Mrs. Ward traded her homestead for a half-interest in a lot upon which was being erected a two-story store building, and shortly afterward purchased, with money arising from the sale of other real estate owned by her, the other half of said property; and upon the completion of the building, in February or March, 1883, moved into the upper story, and occupied the same as a home. This action was brought to subject this property, the store building and lot, to the payment of a judgment for the goods sold to John Ward. The record also shows that at the time John Ward engaged in the dry-goods business, his wife gave him something over $700 in money with which to engage in the business. At the March term, 1886, trial by the court, which made general findings in favor of the defendants and against the plaintiffs, and rendered judgment against the plaintiffs for costs. Plaintiffs bring the case here for review.

*Smith & Solomon,* and *C. L. Botsford,* for plaintiffs in error.
*Knight & Foust,* for defendants in error.

Opinion by CLOGSTON, C.: The record shows that the question involved was one of fact, and depended largely upon the *bona fides* of the transactions between Ward and wife. The court having found in favor of the defendants upon all of the

issues, the rule established by this court will limit our inquiry to the question whether there was evidence tending to support the finding of the court. The evidence was undisputed that whatever money Ward and wife had at the time of their coming to Kansas, was the sole and separate property of Mrs. Ward, the larger per cent. of it being her earnings before her marriage with Ward; and because of the fact that the money was invested in Ward's name during the time they lived on the farm, could make but very little difference; for when the money was reinvested in town property, that being long before Ward engaged in the dry-goods business, and long before he contracted the indebtedness to the plaintiffs, the property was placed in Mrs. Ward's name. The record would have disclosed that fact, had the plaintiffs, at the time they sold the goods, made an examination; in fact, at the time of the contracting of this debt the property in controversy had not been purchased. Shortly afterward, however, Mrs. Ward traded her homestead for a half-interest, and from the sale of other real estate the remaining interest was purchased. If the property belonged to Mrs. Ward, no declarations of her husband could divest her of it. The plaintiffs must learn the truth of such statements, or take the consequences of reckless dealing. If, however, it is once shown that even if the property did belong to the defendant, she, in her dealings with her husband, allowed him to use and control the property in such a manner as to lead or induce a prudent business man to trust him upon the strength of such dealing and handling of property, then in that case she could not be heard to complain; but nothing is shown in this record to warrant any such deductions or conclusions.

Plaintiffs insist that fraud was shown in the sale of the goods, and that the defendant participated therein by receiving a part of the consideration. The defendant received a conveyance from McNutt for eighty acres of land, which was a part payment of the goods sold by her husband to him. It is also shown that Mrs. Ward advanced to her husband at the time he started in the dry-goods business, some $700; at an-

other time, $300; and while there is no explanation given why the property was conveyed to her by McNutt, yet, the indebtedness having been shown, we can fairly presume that the transfer was made to pay or extinguish that indebtedness. But suppose there was fraud in this transaction, and that she received this conveyance to assist her husband in defrauding the plaintiffs. If this were true, then there would be good grounds for setting aside that transaction, or reasons for subjecting such property to the payment of their claim. But this the plaintiffs are not seeking to do, and we cannot see how this could tend to show that defendant was not the owner of the store building in controversy. She may have owned that, although afterward she assisted her husband in a fraud; but this fraud, if it was one, in no manner induced the plaintiffs, in the first instance, to contract the indebtedness. Therefore we think that evidence was immaterial.

Defendants in error insist that this store building, being occupied by them as their homestead, was exempt. On this question we do not care to express an opinion; and in fact it is not necessary, for we think that the evidence fairly shows that this property in controversy was the property of Mrs. Ward. If it was her property, then it was immaterial in this action whether it was a homestead or not. We think the judgment of the court below was correct. It is therefore recommended that its judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.